IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

STEPHEN M. MOBLEY, # 43369-061                             PETITIONER

V.                                                                             CIVIL ACTION NO. 5:11cv135-DCB-MTP

ARCHIE LONGLEY, Warden                                          RESPONDENT

## REPORT AND RECOMMENDATION

BEFORE THE COURT is the *pro se* Petition of Stephen M. Mobley for a Writ of Habeas Corpus [1], filed under 28 U.S.C. § 2241. Having considered the submissions of the parties, all matters made a part of the record in this case, as well as applicable law, the undersigned is of the opinion that the Petition should be dismissed with prejudice.

### Background

On August 3, 2007, Petitioner Stephen M. Mobley was sentenced by the United States District Court for the Southern District of Ohio to a 70-month term of imprisonment for Conspiracy to Possess with Intent to Distribute in Excess of 1000 Kilograms of Marijuana in violation of 21 U.S.C. § 846. On November 13, 2008, Mobley was sentenced by the same court to a 30-month term of imprisonment for Conspiracy to Commit Mail, Wire and Bank Fraud in violation of 18 U.S.C. § 1349 and a 24-month term of imprisonment for Aggravated Identity Theft in violation of 18 U.S.C. § 1028A.[1]

At the time he filed his Petition, Petitioner was incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi.[2] Petitioner is currently incarcerated at the Federal Medical

---

[1]*See* Ex. 1 to Answer [6-1].

[2]The events alleged in the petition occurred at the Federal Correctional Institution in McKean, Pennsylvania.

Center in Lexington, Kentucky, and is projected to be released from BOP custody on April 28, 2014.[3]

In his Petition filed on September 12, 2011, Mobley challenges an Incident Report dated March 21, 2010, charging him with "Possession of a Hazardous Tool" (a cell phone) in violation of the Bureau of Prisons Disciplinary Code 108, and a related disciplinary proceeding in which he was found guilty of the offense. Mobley alleges that when he received the incident report, he was advised of his rights, and he requested a staff representative, requested the phone to be analyzed, that the staff member who issued the report be called to testify at the hearing, and that he be allowed to call witnesses. He claims he was denied all of the above requests and was found guilty of the offense. Mobley asks that he be provided another hearing or that his 30-days of good time credit be given back to him, that all sanctions resulting from the offense be removed, and that the offense be expunged.

The incident report reflects that on the morning of March 21, 2010, Senior Officer J. Knight was conducting random cell searches at the Federal Correctional Institution in McKean, Pennsylvania. In cell number E04-103, Officer Knight pulled out the top drawer of the desk and discovered a Verizon Samsung cell phone and a cell phone charger. According to Officer Knight, Mobley admitted that the cell phone and charger belonged to him. Mobley was issued an Incident Report charging him with violation of disciplinary code 108, possession or introduction of a hazardous tool.[4]

Mobley received a copy of the incident report notifying him of the charges against him on

---

[3] http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&FirstName=stephen&Middle=&LastName=mobley&Race=U&Sex=U&Age=&x=76&y=13 (last visited April 4, 2013).

[4] *See* Ex. 3 to Answer [6-3].

2

March 21, 2010, at 4:00 p.m. On that same date the charge against Mobley was investigated by Lieutenant J. Kahm, and Mobley was advised of his right to remain silent. Mobley denied that phone was his or that he had told Officer Knight that the phone belonged to him. According to the report, Mobley did not request any witnesses. At the conclusion of the investigation, Lieutenant Kahm found that Officer Knight's statements in the Incident Report supported the charge, and the report was referred to the Unit Disciplinary Committee (UDC) for further disposition.[5]

On March 23, 2010, the UDC reviewed the incident. Mobley denied that phone was his or that he had told Officer Knight that the phone belonged to him. Due to the severity of the punishment/sanctions, the UDC referred the matter to the Disciplinary Hearing Officer (DHO).[6]

According to the "Notice of Discipline Hearing Before the (DHO)" form, signed by a staff member whose name is illegible, Mobley was given notice of the hearing on March 23, 2010.[7] However, the notice is not signed by Mobley, and the signature line states "unable to sign." Further, both blanks ("do" and "do not") are checked as to whether Mobley requested a staff representative, with someone's initials over the "do not" blank, and the representative's name, B. McCann marked through.[8] Likewise, according to the "Inmate Rights at Discipline Hearing" form, signed by the same a staff member whose name is illegible, Mobley was given notice of his rights on the March 23, 2010. However, the form is not signed by Mobley, and the signature line

---

[5]*Id.*

[6]*Id.*

[7]Ex. 4 to Answer [6-4].

[8]*Id.*

states "unable to sign."[9]

The DHO hearing was held on April 9, 2010, before DHO Daniel Schneider. At the hearing, Mobley denied that phone was his or that he had told Officer Knight that the phone belonged to him. He stated that he had only been in that cube/unit for four days and did not know anything about the phone found in the desk. The DHO Report indicates that Mobley did not request any witnesses and waived his right to a staff representative.[10] Likewise, Mr. Schneider's declaration states that Mobley confirmed during the hearing that he did not want a staff representative and did not request any witnesses.[11]

The DHO reviewed the evidence presented, including the written statement of Officer Knight and the statement by Mobley at the hearing, ultimately concluding that "greater weight" should be given to the written statement of Officer Knight. The DHO further stated that Mobley "was responsible to keep all areas under [his] control free from contraband" and that his "assigned cell is an area under [his] control."[12] Accordingly, the DHO found Mobley guilty of the charged offense and imposed the following sanctions: disallowance of 40 days of Good Conduct Time ("GCT"); thirty days disciplinary segregation; disciplinary transfer; and telephone restriction for one year.[13]

---

[9]Ex. 5 to Answer [6-5].

[10]Ex. 6 to Answer [6-6].

[11]Ex. 2 to Answer [6-2].

[12]Ex. 6 to Answer [6-6].

[13]The DHO explained the reasons for the sanctions:

Possession of a hazardous tool seriously disrupts the security and orderly running of the institution. The possession of a cell phone interferes with staff ability to effectively monitor inmate telephone use. Additionally, a cell phone could be used to assist in the introduction of contraband into the Institution or to assist in

4

Analysis

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that disallowance of GCT, which will result in an inmate's confinement being extended, requires due process.[14] However, the Court explained that due process in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part

---

> an escape from the Institution. The possession of a hazardous tool cannot be tolerated, because to do so would lessen staff's ability to maintain the security and good order of the institution. These sanctions were imposed to punish you for your misconduct, to place a significant impact on your future behavior, and to deter inmates from manufacturing and possessing hazardous tools within a correctional institution.

*Id.*

[14]However, with respect to the other sanctions imposed on Mobley (disciplinary segregation, a disciplinary transfer, and restricted telephone privileges) no process was due. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 515 U.S. 472, 478 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 515 U.S. at 478). Accordingly, restrictions or loss of an inmate's institutional privileges, as well as changes in custodial status, do not provide a basis for a constitutional claim. *See Wilkerson v. Stadler*, 329 F.3d 431, 435-36 (5th Cir. 2003) (stating that the Fifth Circuit "has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification"); *Lewis v. Dretke*, 54 F. App'x 795, 2002 WL 31845293, at *1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (no constitutional right to visitation privileges); *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) ("administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest") (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (rejecting claim that confinement in administrative segregation violated a prisoner's due process rights)); *Wilson v. Bundy*, 976 F.2d 957, 958 (5th Cir. 1992) (citing *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988)) ("A prison inmate does not have a protectable liberty or property interest in his custodial classification."); *Williams v. Geo Group, Inc.*, No. 4:08-cv-67- HTW-LRA, 2008 WL 2724889, at *1 (S.D. Miss. July 10, 2008) ("The classification of Plaintiff in a certain level of custody and the loss of prison privileges are not an 'atypical and significant hardship' of prison life."). Moreover, the court notes that prisoners have no constitutional right to be incarcerated in a certain facility, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), and "[c]lassification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5th Cir. 1990).

of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Id.* at 556. Thus, the Court held that due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker, and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70. As set forth below, Mobley received these protections.

First, Mobley was provided more than 24 hours of notice of the charge against him, as the Incident Report was delivered on March 21, 2010, and the DHO hearing was conducted by an impartial decision maker on April 9, 2010.[15]

The parties dispute whether Mobley was allowed an opportunity to present documentary evidence and testimony from witnesses. Mobley alleges in his petition that he did request witnesses. Mobley attaches to his petition an undated letter stating that his "bunkie" David Harmon was present during the incident and knows that he never told Officer Knight it was his phone. He also states in the letter that he wanted to call his prior "bunkie," Edwin Centron, to testify that he never had a phone.[16] However, the record does not support Mobley's allegation that he requested witnesses. The incident report, the DHO Report, and the declaration of Daniel Schneider (DHO) indicate that Mobley did not request any witnesses.[17]

Further, Mobley alleges he requested the cell phone to be analyzed, at his expense, to

---

[15]*See* Exs. 3 and 6 to Answer [6].

[16]*See* Letter (presumably attached to his regional appeal) [1-1] at 5.

[17]*See* Exs. 2, 3, and 6 to Answer [6].

6

prove that none of the numbers called by the cell phone were related to him; there was no analysis of the cell phone. However, "a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation." *Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. Mar. 23, 2007). Moreover, Mobley had an adequate opportunity to refute the charges at the hearing and, therefore, he "has failed to show that the alleged oversight caused him prejudice." *Id.*[18]

The parties dispute whether Mobley requested the assistance of a staff representative, as set forth above. Even assuming Mobley did not waive his right to a staff representative, as alleged by Respondent, a prisoner does not have a general constitutional right to have a staff representative appear on his behalf at a disciplinary proceeding. *See Tewell v. Outlaw*, No. 2:08CV00136 SWW/JTR, 2008 WL 4216423, at * 4 (E.D. Ark. Sept. 12, 2008) (citing *Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996)); *see also Marshall v. Champion*, 82 F.3d 426, 1996 WL 187535, at * 2 (10th Cir. Apr. 18, 1996); *Watt v. Thaler*, Civil Action No. 4:09-CV-412-Y, 2010 WL 99352, at * 3 (N.D. Tex. Jan. 11, 2010) (citing *Baxter v. Palmigiano*, 4256 U.S. 308, 315 (1976); *Wolff*, 418 U.S. at 570)). Rather, due process requires only that inmates be provided with a staff representative where they are illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Tewell*, 2008 WL 4216423, at *4 (citing *Wolff*, 418 U.S. at 570); *see also Evans v. Henman*, 925 F.2d 1468, 1991 WL 19882, at *2 (7th Cir. Feb. 20, 1991); *Hart v. Whalen*, No. 3:08-CV-00828, 2009 WL 5173487, at *7 (M.D. Pa. Dec. 22, 2009). Mobley does not allege that he is illiterate (and his pleadings belie such an allegation). Nor are the issues in this case complex. Thus, he has not established a violation of due process on this basis.

---

[18] Ex. 6 to Answer [6-6].

Finally, Mobley was provided a written statement of the evidence the DHO relied on and the reasons for the disciplinary actions.[19]

To the extent that Mobley challenges the evidence upon which his guilty finding was based, in order for a prison disciplinary decision to pass constitutional muster there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the findings of the disciplinary board, its decision must be upheld. *Id.* at 456.

In the instant case, the DHO reviewed the evidence presented, including the written statement of Officer Knight in the Incident Report, which included a photograph of the cell phone and charger found in Mobley's cell, and the statement by Mobley at the hearing, ultimately concluding that "greater weight" should be given to the written statement of Officer Knight.[20] "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Moreover, Mobley did not dispute a cell phone and charger were found in his cell; rather, he merely disputes that they belonged to him. As stated by the DHO in his report, Mobley "was responsible to keep all areas under [his] control free from contraband," and his "assigned cell is an area under [his]

---

[19]Ex. 6 to Answer [6-6].

[20]The DHO noted that Officer Knight is under oath to provide truthful statements. *See* Ex. 6 to Answer [6-6]

8

control."[21] In this case, there was clearly "some evidence" to support the DHO's finding. *See Hill*, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *Hudson*, 242 F.3d at 536-37 (holding that the information provided in a written incident report can, standing alone, satisfy the "some evidence" standard). As there was "some evidence" to support the DHO's decision, it must be upheld.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Stephen M. Mobley's Petition for a Writ of Habeas Corpus [1] be denied and dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

---

[21]Ex. 6 to Answer [6-6].

THIS, the 18th day of April, 2013.

>s/Michael T. Parker
United States Magistrate Judge